## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| LOWE ELECTRIC SUPPLY | : | |
| COMPANY and EDWARD SPELL, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 5:14-CV-335 (CAR) |
| REXEL, INC., f/k/a Summers | : | |
| Group, Inc. and REXEL HOLDINGS | : | |
| USA CORP., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### ORDER ON MOTION TO DISMISS AND PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction; Defendant's Motion to Dismiss; Plaintiffs' Motion to Stay; and Plaintiffs' Motion to Consolidate the Trial on Merits with Hearings on Motion for Preliminary Injunction and a Motion to Stay the Case.  For the following reasons Plaintiffs' Motion for Preliminary Injunction [Doc. 5] is **GRANTED**; Defendant's Motion to Dismiss [Doc. 12] is **DENIED;** Plaintiffs' Motion to Stay [Doc. 18] is **GRANTED; AND** Plaintiffs' Motion to Consolidate the Trial on Merits with the Hearing on Motion for Preliminary Injunction and a Motion to Stay the Case [Doc. 11] is **DENIED**.

1

## BACKGROUND

The present action was instituted by Plaintiffs Edward Spell and Lowe Electric Supply Company ("Lowe") (collectively "Plaintiffs") when they filed a Motion for Preliminary Injunction with this Court on September 22, 2014. Plaintiffs seek to enjoin Defendant Rexel, Inc. ("Rexel") from enforcing restrictive covenants against Mr. Spell that he signed when he was employed with Rexel.

Mr. Spell has been a resident of Hahira, Georgia since 1997. Rexel is an international distributor of lighting and electrical equipment and is a resident of Delaware with its principal place of business in Texas. Lowe is a resident of Georgia with its principal place of business in Macon, Georgia.

Since 2003, Mr. Spell has worked for Rexel as an outside salesman in Rexel's Thomasville, Georgia; Valdosta, Georgia; and Tallahassee, Florida offices. Prior to his resignation, Dothan, Alabama was also added to his sales territory. On January 12, 2011, at his home in Hahira, Mr. Spell signed an employment contract with Rexel that contained a series of restrictive covenants that were comprised of non-compete, non-solicitation, and non-recruit clauses ("2011 Agreement"). In late 2013, early 2014, Mr. Spell began experiencing a series of distribution and personnel issues and became increasingly dissatisfied with his employment at Rexel. In an attempt to show Mr. Spell

his value to the company, Rexel sent Mr. Spell a letter agreeing to change his compensation terms from a commission plan to a set base-level salary.  Mr. Spell received the letter via email and later signed it, on May 5, 2014 ("2014 Agreement"). The 2014 Agreement "incorporated by reference" the 2011 Agreement.

On September 11, 2014, after becoming frustrated by an interaction he had with a new sales manager, Steve Geuther, Mr. Spell resigned from his position at Rexel.  Mr. Spell informed Amy Boutwell, Director of Human Resources for Rexel, that he was resigning.  At that time, Mr. Spell asked Ms. Boutwell if Rexel would enforce the restrictive covenants, and she assured him that they would.

After his resignation, Lowe offered Mr. Spell employment.  However, it became clear that if Lowe hired Mr. Spell, he would break the restrictive covenants in the 2011 Agreement.  Thus, on September 22, 2014, Mr. Spell and Lowe filed a Complaint with the Court seeking a declaratory judgment and injunctive relief.  The same day that Plaintiffs filed suit, Mr. Spell received a termination letter from Rexel's legal department, written by in-house-counsel, Jonathan Plotkin.  In that letter, Rexel reiterated to Mr. Spell that he was bound by the restrictive covenants in the 2011 Agreement.  Three days after Plaintiffs filed suit in this Court, on September 25, 2014, Rexel filed a complaint against Plaintiffs in the circuit court in Leon County, Florida.

That case has been removed to the Northern District of Florida, Tallahassee Division ("Florida District Court action").

On October 2, 2014, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief ("Motion for Preliminary Injunction"), and Defendant countered with a Motion to Dismiss or, in the Alternative, Transfer or Stay ("Motion to Dismiss").  Notice was given to both parties and this Court held a hearing on October 20 and 21, where both sides presented evidence and witnesses.  After the hearing, the Court gave the parties the opportunity to brief any issues they wanted to further address in support of their various respective Motions.  Having received all briefs, the Motions are now ripe for adjudication.

### "Old" Georgia Law and the Restrictive Covenant Act

Because it is dispositive to this case whether "old" Georgia or "new" Georgia law applies (i.e., the Georgia Restrictive Covenants Act), the Court finds it necessary to give the following background.  Prior to 2011, Georgia law disfavored restrictive covenants, which were considered a partial restraint of trade and against public policy.[1]  Under the old Georgia law, courts enforced a restrictive covenant in an employment contract only

---

[1] *See Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc.*, 309 Ga. App. 503, 507 (2011). The change in Georgia's law on restrictive covenants was a long and complicated process, finally validated by a change in Georgia's Constitution.

if "(1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public."[2]  Moreover, restrictive covenants were required to be "strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness."[3] Additionally, whether the restraint imposed by the employment contract was reasonable was a question of law to be determined by the court.[4]  Where a non-compete or non-solicitation provision was found overbroad, the court was not permitted to "blue-pencil" or sever the offending provisions; instead, if one provision was found overboard, all provisions were required to be invalidated.[5]

In 2011, the law of restrictive covenants changed.[6] The Georgia Restrictive Covenants Act ("the Act") became effective on May 11, 2011.[7]  The Act sets up criteria for restrictive covenants that are considered presumptively valid and allows courts to

---

[2] *Trujillo v. Great S. Equip. Sales, LLC*, 289 Ga. App. 474, 476 (2008) (citations omitted); *see also Hostetler v. Answerthink, Inc.*, 267 Ga. App. 325, 328(a) (2004).

[3] *Trujillo*, 289 Ga. App. at 476.

[4] *Id*.

[5] *Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1303-04 (11th Cir. 2005).

[6] For further discussion regarding the change of the law, see *Becham v. Synthes USA*, 482 Fed. Appx. 387, 388-89 (11th Cir. 2012).

[7] O.C.G.A. §§13-8-50, *et seq*.

modify or blue-pencil overly broad language.[8]  The Act was not meant to be retroactive and does not apply to contracts entered into previous to its effective date.[9]

## DISCUSSION

### A.  MOTION TO DISMISS[10] OR, IN THE ALTERNATIVE, TRANSFER OR STAY

In its Motion to Dismiss, Rexel asks this Court to dismiss the instant action and allow the parties' respective claims to be adjudicated in the subsequently-filed Florida District Court action.  In response, Plaintiffs filed a Motion to Stay the Florida District Court action arguing that the "first-filed rule" should apply.  Rexel, however, argues that this case gives rise to compelling circumstances that justify an exception to the first–filed rule.  Because Plaintiffs first-filed in the Middle District, this Court retains priority over the Florida District Court action and thus Defendant's Motion to Dismiss [Doc. 12] is **DENIED**, and Plaintiffs' Motion to Stay [Doc. 18] is **GRANTED**.

#### 1.  First-Filed Rule

The Eleventh Circuit has held that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption

---

[8] *Id.*

[9] *Becham*, 482 Fed. Appx. at 389.

[10] On a motion to dismiss, the Court must accept all facts pleaded by the plaintiff as true. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

across the federal circuits that favor[] the forum of the first-filed."[11]  The United States

Supreme Court noted that the discretion granted to a district court in its decision to

hear a declaratory action first-filed in their court is "unique and substantial"[12] as well as

"equitable in nature."[13]  The first-filed rule is considered a "doctrine of federal comity"[14]

meant to promote judicial efficiency and avoid wasting judicial resources.[15]

      Under the first-filed rule, the entire action should be decided by the court in

which the action was originally filed.   The first-filed rule, however, is only a

presumption, albeit a strong presumption.[16]   Therefore, although the first-filed rule

should not be "disregarded lightly," it may be overcome by a showing that "compelling

circumstances" warrant an exception.[17]   The burden of proving an exception rests with

the party objecting to the first-filed forum.[18]

      In determining what constitutes "compelling circumstances" necessary to

overcome the first-filed rule, the Eleventh Circuit has outlined various equitable factors

for a court to consider, such as: where the employee works and lives, where the contract

---

[11] *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1134-35 (11th Cir. 2005).

[12] *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995).

[13] *Manuel,* 430 F.3d at 1135 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952)).

[14] *Thomas Betts Corp. v. Hayes,* 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002).

[15] *In re Checking Account Overdraft Litig.,* 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012).

[16] *See Manuel,* 430 F.3d at 1134-35.

[17] *Id.* at 1135.

[18] *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982).

was executed, where the alleged violation of the contract occurred, where the locus of operative facts are, where the majority of the potential witnesses are, what the relative means of the parties are, where the effects of the restrictive covenants will be felt, whether the forum's law should be applied, and, finally, whether an action was in anticipation of litigation.[19]

Rexel bases its Motion to Dismiss on the last factor listed—namely, that this case is an anticipatory filing. Rexel argues that Plaintiffs filed their action with this Court as an improper preemptive strike and "in apparent anticipation" of Rexel's Florida Court action.  Rexel relies on the following facts to support its argument: 1. when Mr. Spell informed Amy Boutwell of his resignation, Ms. Boutwell told Mr. Spell that Rexel would enforce the restrictive covenants; 2. the day Mr. Spell filed suit in this Court, September 22, 2014, he received a letter from Rexel reasserting the restrictive covenants in the 2011 Agreement, and Rexel's intent to enforce them; 3.  because Lowe and Mr. Spell filed suit previous to Rexel finding out that Mr. Spell accepted employment with Lowe,[20]  it was deprived of its "opportunity to file suit on its own behalf."[21]

---

[19] *See Manuel*, 430 F.3d at 1134-35; *Ven–Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *see also Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) (noting that filing a declaratory judgment action in anticipation of suit in another forum "is an equitable consideration which the district court was entitled to take into account").

[20] Reply to Motion to Dismiss, Doc. 27 at 4.

[21] *Id*.

In response, Mr. Spell states that although Ms. Boutwell told him that the restrictive covenants would be enforced, Rexel did not threaten litigation or specifically tell Mr. Spell that they would file suit.[22]  Notably, although Mr. Spell received a letter from Rexel on the day he filed suit, Mr. Spell did not receive that letter until after Plaintiffs' Complaint was filed in this Court.[23]  Moreover, Plaintiffs argue that even if they "believed" Rexel would "take legal action," a possibility of litigation does not rise to the "threat of litigation"[24] necessary to find Plaintiffs filed this action improperly. The Court agrees.

Whether an oral assertion that an employer "will enforce its restrictive covenants" constitutes an "imminent threat of litigation" is not merely a playful linguistic distinction but a clear fact that must be established to find an action improperly anticipatory.  The Court is unpersuaded that Rexel actually threatened Mr. Spell with litigation.[25]  The possibility that Rexel could threaten litigation does not mean Rexel actually did threaten such a suit, and the facts of this case do not support Rexel's argument.  Furthermore, the present facts are distinguishable from cases where the courts have held an action to be improperly anticipatory.  Here, Mr. Spell did not

---

[22] *See* Transcript, Doc. 22 at 28.
[23] Transcript, Doc. 22 at 29.  Mr. Spell testified that he was on vacation and returned late in the afternoon. The Complaint was filed at 2:57 pm, and he picked up his mail around 4:00 pm. *Id*.
[24] Plaintiffs' Response to Motion to Dismiss, Doc. 17 at 7.
[25] Reply to Motion to Dismiss, Doc. 27 at 1-2.

receive the letter from Rexel's legal department until <u>after</u> he had filed his Complaint. Moreover, the letter, even if it had been received previous to the filing of the Complaint, was a form letter that referenced the restrictive covenants, not a cease and desist letter.[26] The Court is also unconvinced that Ms. Boutwell's oral assertion to Mr. Spell that the restrictive covenants would be enforced by Rexel[27] constitutes a threat of "specific legal proceedings."[28] Mr. Spell testified that Ms. Boutwell told him that the "people above her would make that decision."[29]

The Eleventh Circuit has found an action to be improperly anticipatory where an action was filed the day after receiving a letter promising judicial proceedings "forthwith."[30]  However, such is not the case here.  The present case falls squarely into the Eleventh Circuit's precedent that a "reasonable apprehension that a controversy

---

[26] Even if Mr. Spell had received the letter, Rexel's in-house counsel, Jonathan Plotkin, testified that this was not a cease and desist letter. Transcript, Doc. 22 at 98.

[27] Transcript, Doc. 22 at 28.

[28] *Manuel*, 430 F.3d at 1137.

[29] Transcript, Doc. 22 at 28.

[30] *See Ven-Fuel*, 673 F.2d at 1195.  *See, e.g., Heritage House, Inc. v. Franklin Mint Corp.*, 1986 WL 6181 (M.D. Tenn. 1986) (transferring declaratory judgment suit to court of second-filed infringement lawsuit under an "equitable" good faith negotiations exception to the general rule.); *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155, 1160 (W.D. N.Y. 1987) ("[I]t was inappropriate for Bausch & Lomb to 'raise the sword of litigation' and seek a legal declaration of its rights, when other avenues for resolution of the dispute were open to it." Court transferred declaratory judgment suit to court of second-filed infringement lawsuit under an equitable good faith negotiations exception to the general rule.).

exist[s]" is not the "equivalent to an imminent threat of litigation."[31]   Thus, because there is a distinction between the belief that a controversy exists and the imminent "threat" of litigation, the Court finds Plaintiffs' Compliant was not an anticipatory filing and thus not a compelling circumstance justifying an exception to the first-filed rule.

The Court is also unpersuaded by Rexel's argument that Plaintiffs' present action did not give Rexel "time" to threaten litigation and thus falls within an exception to the first-filed rule.   There is no general requirement that an employee who has signed restrictive covenants must wait for the employer to file a lawsuit before establishing their own litigation strategy.[32]   Such a holding would place an employee who has signed potentially unenforceable restrictive covenants in a legal limbo, while the previous employer holds all the cards.   To hold otherwise would render the first-filed rule in such actions moot because "each time a party sought declaratory judgment in one forum, a defendant filing a second forum more favorable to defendant could always prevail under the anticipatory filing exception."[33]

Even if the Court found that Plaintiffs' filing was improperly anticipatory, such a finding is not dispositive as to whether this action remains in this Court under the first-

---

[31] *Manuel*, 430 F.3d at 1137.

[32] *See id*. The Eleventh Circuit has found that there is "nothing inequitable" in a plaintiff seeking legal advice and later choosing to work and file in a state that shares its view that a Restrictive covenant is invalid and unenforceable. *Id*.

[33]*Id*. (citations omitted).

filed rule.[34]  The Eleventh Circuit has held that even where "a filing is anticipatory[,] this consideration does not transmogrify into an obligatory rule mandating dismissal."[35] Indeed, as set forth earlier, whether an action is anticipatory is just one equitable factor a district court considers when deciding to hear a declaratory action first-filed in its court. These factors weigh in favor of this action remaining in the Middle District of Georgia.

Not only is the Middle District the forum where the action was first-filed, but both parties have significant contacts with Georgia, and with the Middle District in particular.  The locus of operative facts rests in Southwest Georgia.  Mr. Spell lives in Hahira, Georgia and has done so for many years. Approximately 70% of Mr. Spell's work with Rexel was in Georgia.  He is seeking to work for Lowe, a Georgia company with its principal place of business in Macon.[36]  The disputed covenants were signed in Georgia.  Rexel seeks to enforce the restrictive covenants against Mr. Spell who lives and wishes to continue working in Georgia.  Therefore, the effects will be felt almost exclusively in Georgia.  Finally, the choice of law provision does not weigh in favor of

---

[34] "[O]ur precedent <u>does not</u> stand for the proposition that the district court was required to dismiss a declaratory judgment action when the action was filed in apparent anticipation of another proceeding." *Id*. at 1137 (emphasis added).

[35] *Id*. at 1135; *see also Ven-Fuel*, 673 F.2d at 1195.

[36] Lowe is mainly in Georgia and transacts only about 1% of its business in Florida.

the Florida forum, because, as will be discussed in more detail below, Georgia public policy dictates that Georgia law governs this issue.

Therefore, for the reasons detailed above, the Court hereby **DENIES** Defendant's Motion to Dismiss [Doc. 12].  Moreover, since this Court finds that this action is properly before it under the first-filed rule, it hereby **GRANTS** Plaintiffs' Motion to Stay [Doc. 18].

## B.  MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs filed their Motion for Preliminary Injunction asking this Court to enjoin Defendant from enforcing the restrictive covenants.[37]  "A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites."[38]  In order to obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever

---

[37] The Court treats Plaintiffs' Motion for a Temporary Restraining Order or Motion for Preliminary Injunction as a Motion for Preliminary Injunction because the parties extensively briefed the issues, as well as presented arguments and evidence to the Court at a hearing.  *See Haitian Refugee Center, Inc. v. Baker,* 950 F.2d 685 (11th Cir. 1991).  Even still, the same standard applies to a request for a temporary restraining order as it does to a preliminary injunction. *Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir. 1995).

[38] *Northeastern Fla. Chapter v. Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir. 1990).

damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest."[39] Moreover, a preliminary injunction is only available where there is no legal remedy and where it is necessary to prevent irreparable harm and preserve the Court's meaningful decision on the merits.[40]

### 1. Likelihood of Success on the Merits

To determine the merits of Plaintiffs' Motion, the Court must first decide whether the 2011 Agreement or 2014 Agreement controls, and whether old Georgia law or the Act should apply.  Therefore, the bedrock of Plaintiffs' ability to establish the likelihood of success on the merits rests on the applicability of "old" Georgia law and public policy.  For the following reasons, this Court finds the 2011 Agreement controls and that the restrictive covenants should be interpreted according to "old" Georgia law and public policy.

### a.   2011 Agreement Controls and Old Georgia Law Applies

First, the Court must determine which Agreements' effective date controls—the 2011 Agreement or the 2014 Agreement.  Plaintiffs argue that the effective date of the 2011 Agreement controls and thus old Georgia law applies.  Rexel argues that the 2014

---

[39] *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir. 1985); *Gold Coast Publ'ns, Inc. v. Corrigan,* 42 F.3d 1336, 1343 (11th Cir.1994).
[40] *Alabama v. US Army Corps of Eng'rs,* 424 F. 3d 1117, 1128 (11th Cir 2005).

Agreement, which was signed well after the codification of the Act, is a new contract meant to replace the 2011 Agreement, and thus, the Act—not old Georgia law—applies. Plaintiffs contend that the 2014 Agreement is simply a modification to the 2011 Agreement, which only modified the terms of Mr. Spell's compensation, and thus the Act is inapplicable.  The Court agrees with Plaintiffs and finds the 2014 Agreement is a modification, and thus the 2011 Agreement's effective date is controlling in determining the applicable Georgia law.

By arguing that Mr. Spell and Rexel entered into a new contract, Rexel is in fact seeking to show that the 2014 Agreement was a novation of the 2011 Agreement.  A novation is where a new contract is intended to replace and extinguish or supersede the specific terms at issue in the prior contract.[41]  In disputing the existence of a novation, Plaintiffs contend that the restrictive covenants in the 2011 Agreement were overly broad and thus, under old Georgia law, void *ab initio*.  The Court, however, finds it unnecessary to engage in a novation analysis.  "The construction of a contract is a question of law to be decided by the trial court, but no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation."[42]  The Court finds the

---

[41] *Beasley v. Agricredit Acceptance Corp.*, 224 Ga. App. 372, 373-74 (1997).
[42] *Dan J. Sheehan co. v. Ceramic Technics Ltd.*, 269 Ga. App. 773, 777 (2004) (citations omitted).

2014 Agreement to be unambiguous and reads it according to the plain language of its terms.  As such, the Court is unconvinced that the terms of the 2014 Agreement were meant to supersede and extinguish the 2011 Agreement.

A modification to a contract is a "change or alteration, which introduces new elements into the details, or cancels some of them, but leaves the general purpose of the subject-matter of the contract intact."[43] Moreover, a modification must generally be founded on additional consideration, and the parties must manifest their intent to modify the contract.[44]

The plain language of the 2014 Agreement clearly states that the 2014 Agreement was meant to "amend and modify" Mr. Spell's terms of compensation, and all other terms of the 2011 Agreement were incorporated by reference and were to "remain unchanged."[45] It does not reference the restrictive covenants, but states specifically that it was Rexel's "offer to revise the terms of your compensation arrangements set forth in the 2011 Agreement."[46] Moreover, the consideration of Mr. Spell's ongoing employment at-will properly supports the modification to the 2011 Agreement.

---

[43] *Perkins v. M&M Office Holdings, LLC,* 303 Ga. App. 770, 773 (2010) (citations omitted).

[44] *See Miles v. Deen*, 184 Ga. App 198, 199 (1987); *Ryder Truck Lines, Inc. v. Scott.*, 129 Ga. App. 871, 873-74 (1973).

[45] Plaintiffs' Exhibit 3 at 1,2.

[46] *Id*. at 2.

Having found that the 2014 Agreement is a modification of the 2011 Agreement, the Court must next determine which law applies—the old Georgia law or the Act. Because the 2014 Agreement is a modification, the date from the 2011 Agreement controls.  Generally, a provision that is "void *ab initio* as against public policy is never in force, cannot be ratified or affirmed and is not subject to being enforced by the courts."[47] Because the Court finds that the non-compete and non-solicitation clause were void under the old Gerogia law, they were void *ab initio* and thus cannot be ratified to life.

Rexel argues that the Act applies because the 2011 Agreement, as incorporated into the 2014 Agreement, was a ratification of the restrictive covenants.  Rexel suggests that an exception to the general rule exists when a law is repealed that made the contract illegal, and the contract is ratified subsequent to the repealed law.  Rexel argues that a contract void *ab initio* can be reaffirmed to life.  In support of this argument, Rexel cites a Texas Appellate Court decision, *TCA Bldg v. Northwestern Resources Co.*,[48] as well

---

[47] *Loney v. Premerica Life Ins. Co.*, 231 Ga. App. 815, 817 (1998).
[48] 922 S.W. 2d 629, 634 (Tex. App. 1996).  In this case a lessor suspected that the terms of its lease were invalid under an old Texas law, which had been subsequently changed. The lessor convinced the lessee to ratify the contract, thus bringing it in line with the new law.  Therefore, the court found that a contract void under an old law could be ratified and valid if it was done so after the law was repealed, and this was in line with Texas legal precedent.

as two well-known treatises.[49]   The Court, however, is unpersuaded that the Georgia courts recognize such an exception.

Georgia Appellate Courts have yet to deal with the specific question of whether a restrictive covenant that was once void *ab initio* under the old Georgia law could be ratified back to life subsequent to the passage of the Act.   However, despite the dearth of case law on restrictive covenants in this particular context, the Georgia Appellate courts have recognized that a contract term that was void *ab initio* cannot be reaffirmed to life by a subsequent ratification.[50]   The Court finds the rationale in *Cone v. Marietta Recycling Corp.* instructive.[51]   In *Cone*, the court found the employee did not ratify the void covenants back to life by signing a separation agreement that included restrictive covenants that were void *ab initio* under old Georgia law.[52]

Moreover, the Court finds that the case law asserted by Rexel is distinguishable from the present case.   Unlike the cases cited by Rexel, here, the Act is clear—it will not

---

[49] 15-89 CORBIN ON CONTRACTS § 89.14; 8 WILLISTON ON CONTRACTS § 19:35 (4th ed.).

[50] *See Milton Frank Allen Pub., Inc. v. Ga. Ass'n of Petroleum Retailers, Inc.*, 224 Ga. 518, 528 (1968); *Ameris Bancorp v. Ackerman*, 296 Ga. App. 295, 298-99 (2009) (finding a void provision is "ineffective, inoperative, and incapable of ratification").

[51] No. 2012 CV 223811 (Mar.  26, 2013). The Court recognizes that a superior court case is in no way binding on this Court; however, the Court finds its logic and legal analysis salient. Moreover, this Court finds *Cone's* logical analysis to be grounded in Georgia's Appellate precedent.

[52] *Id*.

18

be applied retroactively.[53]   To accept Rexel's argument would remove the teeth from the non-retroactive provision of the Act.  The Court will not rule in line with a treatise or another state's precedent where the imperative of the Act, and appellate precedent in Georgia, finds otherwise.  Because the non-compete and non-solicitation clauses in the 2011 Agreement were void *ab initio* under the old Georgia law, and the Act is not retroactive, the subsequent modification for compensation terms could not make legal something that was illegal from its inception.

### b.  Non-Compete and Non-Solicitation Clauses are Invalid

Having found that the effective date of the 2011 Agreement controls and the old Georgia law applies, the Court must now determine whether the restrictive covenants are valid.   The Court finds the non-compete provision is overly broad and because where a non-compete fails dues to unreasonableness so do the non-solicitation clauses, the Court finds the non-solicitation clauses invalid.

Under the old Georgia law, restrictive covenants in an employment contract are subject to "strict scrutiny"[54] and "such restrictions must be strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as

---

[53] *See Boone v. Corestaff Support Services, Inc.*, 805 F. Supp. 2d 1362, 1377-78 (discussing the non-retroactive application of the Act).

[54] *Dent Wizard Int'l Corp. v. Brown*, 272 Ga. App. 553, 555 (2005).

to overall reasonableness."[55]   A non-compete clause must be reasonably limited in terms of capacity, and where an employee is "prohibited from being an officer or director or owning stock in other companies, activities which are very different from his work," such a description is overbroad.[56]

Moreover, "a non-competition covenant which prohibits an employee from working for a competitor in any capacity, that is, a covenant which fails to specify with particularity the activities which the employee is prohibited from performing, is too broad and indefinite to be enforceable."[57]   Therefore, previous to the Act, Georgia courts were hostile to language that restricted an employee from working in "any capacity" or had the effect of restricting an employee from working with a competitor in any capacity and found such language void as against public policy.[58]   The old Georgia law

---

[55] *Trujillo*, 289 Ga. App. at 476.

[56] *Brunswick Floors, Inc. v. Guest*, 234 Ga. App. 298, 300, 506 S.E.2d 670, 673 (1998) (citation omitted).

[57] *Nat. Teen-Ager Co. v. Scarborough*, 254 Ga. 467, 469 (1985) (citation omitted) (emphasis added).

[58] *See, e.g.*, *Fields v. Rainbow Intern. Carpet Dyeing and Cleaning Co.*, 259 Ga. 375  (1989); *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539(2)(c)(1983) (concluding that covenant providing that former employees "may not engage in the pest control, exterminating, fumigating[,] or termite control business effectively prohibit[ed] them from working for a competitor in any capacity" and therefore was void); *Howard Schultz & Associates v. Broniec*, 239 Ga. 181, 184 (1977); *Stultz*, 285 Ga. App. at 802; *Fleury v. AFAB, Inc.*, 205 Ga. App. 642, 643 (1992) (covenant restricting former employee from, among other things, "engaging in ... any business performed by [his former employer]" was unreasonable in scope because it prohibited the employee from working for a competitor in any capacity); *Johnstone v. Tom's Amusement Co., Inc.*, 228 Ga. App. 296, 300 (1997) (covenant restricting former employee from "carrying on or engaging in the

is clear: an "any capacity" restriction in a non-compete is unrestricted in its scope, and

therefore unreasonable and void.[59]

The 2011 Agreement contains the following non-compete clause:

you agree that during your Company employment and for the twelve (12) month period thereafter, within a radius of one hundred (100) miles from the Company branches in Thomasville, Florida [sic], Tallahassee, Florida, and Valdosta, Georgia (the "Designated Area"), and so long as the Company carries on a like business in the Designated Area, you shall not:

(i) own any interest in, manage, or serve as an employee of or consultant, business advisor or independent contractor, including in any sales or marketing role, for any individual, corporation, partnership, association, joint venture or other entity which is engaged in a business in competition (i.e., electrical distribution and wholesale and related business activities, a "Competitor") with the Company in the Designated Area; provided that your ownership of up to two percent (2%) of the shares of stock or other securities of a Competitor whose shares or securities are traded on a public exchange shall not violate the terms of this provision[.]

Although Rexel points to the fact that the non-compete is limited temporally and

geographically, it is not reasonably limited in terms of capacity.[60]  Rexel's argument that

the non-compete is valid because it is limited only to the Designated Area is unavailing.

---

amusement game business" implied that employee could not participate in such a business in any capacity, rendering the covenant unreasonable and void).

[59] *Ken's Stereo Video Junction, Inc. v. Plotner*, 253 Ga. App. 811, 812-13 (2002).

[60] *Stultz v. Safety & Compliance Mgmt., Inc.*, 285 Ga. App. 799, 802 (2007) (finding a description of one aspect of the business was not a proper limitation, but "merely being illustrative of one type of activity that is prohibited").

A territorial restriction that is reasonable is only one element[61] of a reasonable non-compete and cannot save a non-compete that is overboard in terms of capacity.[62] Although Mr. Spell worked in sales, Rexel acknowledged that under the Agreement, Mr. Spell could not even work as a janitor at a competing business, such as Lowe, within the "Designated Area."[63]  Here, the non-compete clause restricts Mr. Spell from working in "any capacity" and is therefore void.

As to the non-solicitation clauses, the Court need not engage in a reasonableness analysis, because the old law is clear: "if one non-competition or non-solicitation covenant in an employment agreement is too broad, any other covenants restricting competition or solicitation in the agreement will not be enforced either."[64]

---

[61] Georgia courts have established that the reasonableness of a restrictive covenant must meet a "three-element test of duration, territorial coverage, and scope of activity." *Ken's Stereo*, 253 Ga. App. at 812.

[62] *See Id.* at 812-813. Rexel cites *Fab'rik Boutique v. Shops Around Lenox, Inc.*, A14A0937, 2014 WL 4400772 at *7 (Ga. Ct. App. Sept. 8, 2014), for the proposition that this Court may modify the contract by the application of the "rules of contract construction."  The Court finds that the 2011 and 2014 Agreements are unambiguous, and thus interprets the agreements by their plain terms.

[63] Transcript, Doc. 22 at 19.

[64] *H&R Block E. Enterprises, Inc. v. Morris*, 606 F.3d 1285, 1290 (11th Cir. 2010).

### c. Non-Recruitment Clause Severed

Under old Georgia law, a valid non-recruit covenant must contain a territorial limitation.[65]  Unlike non-compete and non-solicitation covenants, Georgia courts have found that a court may sever an invalid non-compete clause from a valid covenant not to recruit.[66]

The 2011 Agreement provides:

> you agree that during your Company employment and for the twelve (12) month period thereafter, within a radius of one hundred (100) miles from the Company branches in Thomasville, Florida [sic], Tallahassee, Florida, and Valdosta, Georgia (the "Designated Area"), and so long as the Company carries on a like business in the Designated Area, you shall not:
>
> > (iv) request, induce or attempt to influence any employee of the Company or any other Company affiliate to terminate his or her employment with the Company or any Company affiliate, or attempt to dissuade any then current employee of the Company or any Company affiliate from continuing employment with the Company or any Company affiliate.

Plaintiffs assert that section (iv) is an overbroad non-requirement clause because it does not contain a territorial restriction.[67]  The Court disagrees and finds section (iv) of the restrictive covenants to be a valid non-recruitment clause of Rexel employees.  The first paragraph of the restrictive covenants is a general provision encompassing all the subparagraph sections clearly creating a territorial limitation restricted to the

---

[65] *See Hulcher Servs., Inc. v. R.J. Corman R.R. Co., LLC,* 247 Ga. App. 486, 491–92 (2000).
[66] *See Johnstone,* 228 Ga. App. at 297.
[67] Complaint, Doc. 1 at 14.

Designated Area and is thus reasonable in its scope.  Therefore, the Court finds the non-recruit in the 2011 Agreement remains in force.

### d.  Choice of Law Provision

Rexel argues that even if the 2011 Agreement controls, the 2011 Agreement's choice of law clause is valid and "Florida law shall govern any questions regarding the interpretation or enforcement of the provisions."[68]  Where a contract has a choice of law provision that purports to apply the law of another jurisdiction, Georgia courts engage in a two-step analysis to determine if Georgia law should apply.  First, the court must determine whether there were significant contacts with Georgia, such that the application of Georgia law would be "neither arbitrary nor constitutionally impermissible."[69]  Second, the court must determine whether the law of another jurisdiction would contravene the public policy of Georgia.  If so, Georgia law applies.[70]  Thus, if a restrictive covenant is overboard under Georgia law and the choice-of-law provision which designates a jurisdiction that would uphold the covenants, then that jurisdiction's law will not be applied to enforce the covenant in Georgia.[71]

---

[68] Plaintiffs' Exhibit 8.

[69] *Convergys Corp. v. Kenner*, 276 Ga 808, 810 (2003); *see also Rayle Tech, Inc. v. Dekalb Swine Breeders, Inc*. 133 F.3d 1405, 1409 (11th Cir. 1998).

[70] *Id.*

[71] *See Convergys,* 276 Ga. at 808; *Carson v. Obor Holding Co., LLC,* 318 Ga. App. 645, 648 (2012).

Florida law allows a court to consider only the legitimate business interests of the party seeking to enforce the covenant and requires courts to modify, rather than invalidate, any restrictive covenants that violate Florida law.[72]  The Florida court cannot consider the impact of the restraint on the party against whom enforcement is sought, a necessary requirement in Georgia.[73]  Moreover, a Florida court would uphold a non-compete that prohibits an employee from working in any capacity with a competitor.[74]  Because under Florida law the restrictive covenants would be enforced or at least blue-penciled, they offend Georgia public policy.  Therefore, this Court finds the choice of law provision invalid.

The non-compete and non-solicitation clauses in the 2011 Agreement are void under old Georgia law and against public policy. The 2014 Agreement was a modification, not a novation and thus, merely incorporated "unchanged" the 2011 Agreement.  Because the restrictive covenants were void *ab initio*, they could not be ratified back to life by Mr. Spell agreeing to a modification of his compensation terms.  Finally, because the choice of law provision is against public policy, Georgia law is

---

[72] *See* F.S.A. § 542.335(1)(c).
[73] *See* F.S.A. § 542.335(1)(g)(1) (in determining the enforceability of a restrictive covenant, a court "[s]hall not consider" any hardship, economic or otherwise, that "might be caused to the person against whom enforcement is sought"); *see also Carson*, 318 Ga. App. at 653.
[74] *See Gold Coast Media v. Meltzer*, 751 So. 2d, 645, 645-46 (Fla. App. 2010).

properly applied. Therefore, the Court finds that Mr. Spell and Lowe have met their burden and can show a likelihood of success on the merits.

### 2. Irreparable Harm and Burden of Hardships

After much consideration, the Court finds Plaintiffs would suffer irreparable harm, and the balance of hardships weigh in their favor. Georgia courts have found that irreparable harm is present when the effect cannot be undone through monetary remedies, such as when a plaintiff can demonstrate that a non-compete would restrict his access to customers, work, and information.[75] These injuries can be in the form of lost opportunities, which are difficult, if not impossible, to quantify.[76] Because of Georgia's public policy, "courts have not hesitated to find irreparable harm in cases involving covenants not to compete."[77]

In the instant case, it is clear that if the restrictive covenants were enforced and the injunction was not to proceed, Mr. Spell would suffer irreparable harm. At the hearing, he testified that at fifty-eight years old, he has worked in sales his entire professional career, and if the restrictive covenants are enforced, he "couldn't work and

---

[75] *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1242 (11th Cir. 2005).

[76] *Id.* (citing Ga. Const. Art. III, § VI, para. V(c); O.C.G.A. § 13-8-2).

[77] *Id. See also, Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003); *Enron Capital & Trade Res. Corp. v. Pokalsky*, 227 Ga. App. 727, 729 (1997).

will probably lose everything."[78] Moreover, Lowe has shown that it would likewise experience economic hardship if the restrictive covenants were enforced, by losing the opportunity to employ a valuable salesman.

In balancing the hardships of the parties, it is clear that the non-compete weighs heavier on Plaintiffs than it does on Rexel.   Rexel is an international company.   Its offices in South Georgia are still open and active, and there is no reason to assume that Rexel will need to close their doors in South Georgia now that Mr. Spell has resigned from their employment, even if it negatively effects their sales and profits.   Rexel argues that, in essence, it is entitled to protection from competition for customers and could potentially lose large portions of its market shares: however, the Eleventh Circuit has noted that "such competition is part and parcel of a competitive economy."[79]  The "loss of business due to free and fair competition is not a harm; violation of legal rules designed to promote such competition is a harm."[80]  On the other hand, Plaintiffs would be harmed by restrictive covenants, which are against applicable Georgia public policy because of their negative effect on valid competition.   Because the Court recognizes that Rexel may suffer harm as a result of the injunction, the Court does not reach its

---

[78] Transcript, Doc 22 at 46.
[79] *MacGinnitie*, 420 F.3d at 1243.
[80] *Id*. at 1243.

conclusion lightly.  Rexel's harm, however, is the result of an overboard covenant not to compete, which is invalid as against Georgia's public policy.

### 3.  Public Policy

Finally, the Court would not offend Georgia public policy by issuing a preliminary injunction.  As outlined above, current Georgia law has found that old Georgia public policy applies to pre-Act restrictive covenants.  Therefore, the Court disagrees with Defendant's contention that the application of old Georgia law would offend current public policy.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss [Doc. 12], and **GRANTS** Plaintiffs' Motion to Stay [Doc. 18].  The Court finds that discovery may proceed in this case and thus **DENIES** Plaintiffs' Motion to Consolidate Trial on Merits with Hearings on Motion for Preliminary Injunction and a Motion to Stay the Case [Doc. 11].  For the reasons outlined above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction [Doc. 5].

## PRELIMINARY INJUNCTION

The Court issues the following preliminary injunction:

1. Defendant is hereby enjoined from enforcing the restrictive covenants in Georgia, including the non-compete, and non-solicitation provisions, as outlined in the 2011 Agreement.

2. Defendant is hereby enjoined from filing or instituting any state court action regarding this case until there has been a final adjudication by this Court.

3. This injunction shall be effective as of the date of the giving of security by Plaintiff as required by Federal Rule of Civil Procedure 65(c).  The amount of the security shall be determined by the Court based upon the recommendations of the parties in the form of written briefs to be filed within fourteen days of the date of this Order.

**SO ORDERED,** this 3rd day of November, 2014.

S  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

JRF/adp